UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

John R. Griffin, Jr.

    v.                              Civil No. 18-cv-440-JL

United States

### REPORT AND RECOMMENDATION

Before the court are:

- Plaintiff John R. Griffin, Jr.'s motion to amend (Doc. No. 4) his complaint, to reduce the amount of damages claimed to $74,000.00 and to remand the case to state court;

- Griffin's Motion to Challenge the Territorial Jurisdiction of the Federal Tort Claims Act ("FTCA") (Doc. No. 17);

- Defendant United States's motion to dismiss Griffin's FTCA claims for lack of subject matter jurisdiction (Doc. No. 2); and

- Griffin's motion for the return of his passport (Doc. No. 7).

Griffin's motions seeking a remand and relating to the coverage of the FTCA (Doc. Nos. 4, 17) raise threshold questions.  The court, therefore, addresses those motions before turning to

Griffin's motion for return of his passport (Doc. No. 7) and defendant's motion to dismiss (Doc. No. 2).

## Discussion

I. Motion to Amend Complaint and to Remand (Doc. No. 4)

Griffin seeks to reduce the amount of damages he claims to an amount beneath the $75,000 amount-in-controversy requirement for this court to exercise its jurisdiction over this case under 28 U.S.C. § 1332, and to thereby effect a remand of this case. The problem with Griffin's path to a remand, however, is that removal jurisdiction here is not based on diversity of citizenship. Rather, removal jurisdiction is based on the identity of Griffin's state court defendant (a federal agent), see 28 U.S.C. § 1442(a)(1), and the Attorney General's certification that the agent was acting within the scope of his federal employment, see 28 U.S.C. § 2679(d)(2).

Because the Attorney General issued the necessary certification regarding the scope of employment and removed the case from Superior Court on that basis, this court presently lacks authority to remand this matter. See generally Osborn v. Haley, 549 U.S. 225, 243 (2007) (citing 28 U.S.C. § 2679(d)(2)). The district judge should therefore deny Griffin's motion to amend (Doc. No. 4).

II. <u>Motion to Challenge Territorial Jurisdiction (Doc. No. 17)</u>

Contending that statutes passed by Congress generally do not apply outside of federal territories and the District of Columbia, Griffin argues that the FTCA does not apply to govern his state tort claims asserted against Federal Bureau of Investigation ("FBI") Agent Mark Hastbacka. Griffin's contention about the territorial reach of federal statutes in general, and the FTCA specifically, is incorrect.

As grounds for his argument, Griffin extracts a quote from <u>Caha v. United States</u>, 152 U.S. 211 (1894) out of context. The <u>Caha</u> Court, after describing an act of Congress outlawing perjury as a criminal law of "universal application" within the United States, then noted, in dicta cited by Griffin, that the states, and not Congress, have police powers sufficient to enact laws to preserve the peace and protect people and property. It is an unremarkable observation, signifying nothing with respect to the FTCA, that the states have police powers that Congress generally lacks. Cf. <u>Operation Rescue Nat'l v. United States</u>, 975 F. Supp. 92, 109 (D. Mass. 1997), <u>aff'd</u>, 147 F.3d 68 (1st Cir. 1998).

Griffin cites inapposite authority and specifically points to language in <u>United States v. Perez</u>, No. CR-06-0001-MAG (MEJ), 2006 U.S. Dist. LEXIS 75086, at *4, 2006 WL 2850018, at *1 (N.D. Cal. Oct. 4, 2006), which quotes <u>Caha</u>, in connection with a

3

ruling concerning Congress's power to pass laws governing conduct at the Presidio, a federal enclave.  In enacting the FTCA, however, Congress did not rely on police powers or its authority to legislate over federal enclaves and territories.  Rather, Congress enacted the FTCA pursuant to its power under U.S. Const. art. 1, § 8, to pay debts, and the inherent power of the sovereign to attach conditions to its consent to be sued.  See generally 1 Lester S. Jayson & Robert C. Longstreth, Handling Federal Tort Claims § 2.14 (2018) (citing United States v. Sherwood, 312 U.S. 584, 586 (1941) ("The United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." (internal citations omitted))).

    Nothing in the FTCA or the Constitution imposes a territorial limit on that statute's applicability, and the cases Griffin cites are inapposite.  The district judge should thus deny Griffin's motion (Doc. No. 17) challenging the territorial scope of the FTCA.

III. United States's Motion to Dismiss (Doc. No. 2)

The United States moves to dismiss Griffin's slander claims for lack of jurisdiction, under Fed. R. Civ. P. 12(b)(1).[1]

    A.    Rule 12(b)(1) Standard

In ruling on a Rule 12(b)(1) motion, the court "credit[s] the plaintiff's well-pled factual allegations and draw[s] all reasonable inferences in the plaintiff's favor." Merlonghi v. United States, 620 F.3d 50, 54 (1st Cir. 2010). The court may consider matters outside of the pleadings, such as affidavits, without converting the motion into one for summary judgment. See id.; Aversa v. United States, 99 F.3d 1200, 1210 (1st Cir. 1996).

    B.    Westfall Act and Scope of Employment

The provision of the FTCA known as the Westfall Act, 28 U.S.C. § 2679(b)(1), generally makes an "action against the

---

[1] Griffin's surreply (Doc. No. 9) filed in response to the United States's Rule 12(b)(1) motion, entitled "Answer to United States Reply to Plaintiff's Objection to Motion to Dismiss," asserts that the alleged slander implicated Griffin's due process rights, potentially giving rise to a Bivens claim against Agent Hastbacka. See Doc. No. 9, at 9. Griffin has not filed a motion to amend the complaint to add a Bivens claim here. Such a motion would not be likely to succeed. The court in Griffin v. Manchester Parole Office, No. 1:16-cv-438-JL (D.N.H. Nov. 21, 2018) (ECF No. 117), concluded that no viable Bivens claim arose from the same set of facts in that case.

5

United States the exclusive remedy for money damages for injury arising from the 'negligent or wrongful act or omission' of a federal employee 'acting within the scope of his office or employment.'" Aversa, 99 F.3d at 1207 (citations omitted).

> Thus, tort actions may no longer be maintained against federal employees in their individual capacities where the alleged tort was committed within the scope of employment. This is true even where, as in the case of an action for defamation, the doctrine of sovereign immunity precludes governmental liability."

Operation Rescue, 975 F. Supp. at 101 (citing United States v. Smith, 499 U.S. 160, 165-67 (1991)). The Westfall Act authorizes the Attorney General to certify that the employee was acting within the scope of his employment. See 28 U.S.C. § 2679(d)(1). "Upon certification, any action . . . shall proceed in the same manner as any action against the United States . . . and shall be subject to the limitations and exceptions applicable to those actions" under the FTCA. 28 U.S.C. § 2679(d)(4).

The Attorney General's certification is not binding on the court, except as to the propriety of the removal. If the Attorney General has issued that certification, a plaintiff contesting the scope-of-employment certification bears the burden of proving that the federal agent acted outside the scope of his employment. Day v. Mass. Air Nat'l Guard, 167 F.3d 678, 685 (1st Cir. 1999); Aversa, 99 F.3d at 1209. That question is

6

governed by state agency law. See Aversa, 99 F.3d at 1209. Applying the appropriate standard in the context of this Rule 12(b)(1) motion, the court considers whether the allegations in Griffin's complaint, taken as true, and any undisputed evidence submitted by the parties, establish that Agent Hastbacka's actions exceeded the scope of his employment, as defined by the pertinent state's law of agency. See Wuterich v. Murtha, 562 F.3d 375, 381 (D.C. Cir. 2009).

New Hampshire follows the principles enunciated in the Restatement (Second) of Agency (1958). See Aversa, 99 F.3d at 1210; Pierson v. Hubbard, 147 N.H. 760, 766, 802 A.2d 1162, 1167 (2002).

> [C]onduct falls within the scope of [an agent's] employment if: (1) it is of the kind she is employed to perform; (2) it occurs substantially within the authorized time and space limits; and (3) it is actuated, at least in part, by a purpose to serve the employer.

Porter v. City of Manchester, 155 N.H. 149, 152, 921 A.2d 393, 397-98 (2007). "[C]onduct is not within the scope of employment if it was 'different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.'" Aversa, 99 F.3d at 1210 (applying New Hampshire law).

The evidence before this court filed in support of the Rule 12(b)(1) motion includes a declaration of Agent Hastbacka, which the United States has incorporated by reference into its reply

brief in this case. See Def.'s Reply to Pl.'s Obj. to Mot. to Dismiss (Doc. No. 8) (citing Decl. of Special Agent Mark Hastbacka in Support of Def.'s Surreply to Pl.'s Mot. for Summ. J., Griffin v. Manchester Parole Office, No. 16-cv-438-JL (D.N.H., filed Sept. 18, 2017) (ECF No. 80) ("Hastbacka Decl.")). Griffin has not disputed that Agent Hastbacka interviewed Griffin at the New Hampshire State Prison, concerning two letters Griffin had sent - one to a New Hampshire Superior Court Judge and the other to the Hillsborough County Attorney's Office while he had been on parole, both of which were perceived as threatening by the addressees. See Hastbacka Decl. at ¶¶ 2-4. Griffin has not disputed that during that interview, Agent Hastbacka asked Griffin about what Agent Hastbacka called "militia" comments in the letters, and that Griffin, in reply, suggested the named of another individual, Michael Salafia, as having militia associations. Id. ¶ 5.

As a follow-up to his interview with Griffin, Agent Hastbacka interviewed Salafia on June 13, 2016. Id. ¶ 6. It is in that interview with Salafia that the alleged defamation occurred; Agent Hastbacka is alleged to have wrongly informed Salafia that Griffin's letter implicated Salafia in a plot to kill a state judge and prosecutor. See Compl., Doc. No. 1-1, at 1, 2.

Griffin argues that because he alleges Agent Hastbacka's statements were made "intentionally, with malice aforethought in retaliation for [Griffin's] letter," Agent Hastbacka was acting outside the scope of his federal employment at the time he made those statements and is therefore not entitled to have the United States assume liability for him.  See Griffin's Obj. to Mot. to Dismiss, Doc. No. 5 at 4.  Under New Hampshire law, however, an act's intentional, wrongful, or even criminal nature does not necessarily remove it from the scope of employment:

> Although an employee's intentionally tortious act was not authorized, it may nonetheless have been within the scope of employment if it was "incidental to authorized duties." According to New Hampshire cases deciding whether assaults were within the scope of employment, the conduct must meet three requirements in order to be considered incidental to authorized duties: (1) the employer authorized or could foresee that the employee would use a reasonable degree of force as a means of carrying out an authorized duty; (2) the employee used excessive force, although wrongly, as a means of accomplishing an authorized duty; and (3) the employee's purpose was, at least in part, to carry out an authorized duty. . . .  See also Restatement [(Second) of Agency] § 229 [1958] cmt. b (even though an act is of an entirely different kind than that authorized, it may be "incidental to an authorized act" if it is "within the ultimate objective of the principal and an act which it is not unlikely that such a servant might do").  If these conditions are met, it follows that the employer is liable for the employee's negligent or willful use of excessive force although the employer did not authorize it and even forbade it.

Aversa, 99 F.3d at 1211 (citations omitted).

Here, Agent Hastbacka's job involved investigating Griffin as to the contents of Griffin's letter and potential violations

9

of federal laws.  It could be anticipated by Agent Hastbacka's employer, the FBI, that the investigation would include contacts with third parties identified by Griffin, and that in follow-up interviews with such individuals, the agent might to some degree loosely or inaccurately describe the letter's contents or the manner in which that person's name came to the agent's attention.  Cf. id. at 1212.

Agent Hastbacka's declaration states that Agent Hastbacka interviewed Salafia to investigate matters relating to Griffin's letters.  See Hastbacka Decl. at ¶ 6.  Griffin has neither alleged facts nor offered any evidence that raises any dispute as to why Agent Hastbacka met with Salafia.  Even if the court takes as true Griffin's allegation that Agent Hastbacka's remarks to Salafia falsely and maliciously mischaracterized what Griffin's letter said, nothing before the court suggests that Agent Hastbacka's interview with Salafia served no legitimate investigative purpose.  Under the scope of employment principles followed in New Hampshire, Agent Hastbacka's alleged statements about the letter during that interview, even if false and defamatory, were within the scope of Agent Hastbacka's employment as a federal agent investigating violations of federal law.  Cf. Minnick v. Carlisle, 946 F. Supp. 2d 128, 132 (D.D.C. 2013) ("Courts routinely find that a federal employee's statements made during the course of government investigations

10

fall within the scope of that employee's duties, even when the statements are alleged to be false or defamatory." (citing cases)), aff'd, No. 13-5241, 2014 WL 590863, 2014 U.S. App. LEXIS 1234 (D.C. Cir. Jan. 22, 2014) (per curiam).

The United States was properly substituted as the defendant to Griffin's claims concerning Agent Hastbacka.  Griffin has not carried his burden of challenging the validity of the Attorney General's scope of employment certification.  Therefore, the restrictions on FTCA claims apply to Griffin's claims here.

### C.   Exhaustion and Sovereign Immunity

The FTCA mandates the dismissal of tort claims if the plaintiff has failed to file any administrative claims with the appropriate agency prior to commencing the action.  See 28 U.S.C. § 2675(a).  Griffin failed to file an administrative claim prior to filing this action.  Furthermore, the FTCA preserves the government's sovereign immunity with respect to slander claims.  See 28 U.S.C. § 2680(h).  Therefore, the district judge should grant the United States' motion (to dismiss this case (Doc. No. 2) because Griffin failed to exhaust his administrative remedies, and the United States is immune from suit on the slander claims.

IV.   Motion to Return Passport (Doc. No. 7)

Griffin has moved this court to order defendant to return his passport.  Griffin claims that the seizure of his passport was undertaken in retaliation for Griffin's exercise of his First Amendment rights by filing this lawsuit, and that the seizure violated Griffin's Fourth Amendment rights.  Griffin's motion is in the nature of a request for an injunction, based on claims of violations of Griffin's First and Fourth Amendment rights, that have not been previously asserted in this case.

A.   Preliminary Injunction Standard

"'A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" Glossip v. Gross, 135 S. Ct. 2726, 2736 (2015) (citation omitted).  Irreparable harm and the likelihood of success weigh most heavily in the analysis.  Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008); Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011).  The burden of proof is on the movant.  See Esso Std. Oil Co. v. Monroig-Zayas, 445 F.3d 13, 18 (1st Cir. 2006).

B.   Irreparable Harm

"Irreparable harm most often exists where a party has no adequate remedy at law." Charlesbank Equity Fund II, Ltd. P'ship v. Blinds To Go, Inc., 370 F.3d 151, 162 (1st Cir. 2004). "A finding of irreparable harm must be grounded on something more than conjecture, surmise, or a party's unsubstantiated fears of what the future may have in store." Id.

A passport may serve as a form of identification and as authorization to travel abroad.  Even if his passport were returned, Griffin could not presently travel outside of the prison, let alone outside of the United States, as he is currently incarcerated.  Griffin thus fails to show any risk of irreparable harm relating to his present inability to travel abroad in the absence of a passport.

Griffin contends that he needed the form of identification provided by his passport when he was in the Division of Community Corrections and had to obtain a job.  Griffin, however, was indicted for an escape from that placement in 2017 and he is currently in the prison's general population.  His custody level does not presently allow him to obtain work outside of the Department of Corrections.  Griffin does not need a passport at this time as a form of identification.

Griffin has thus failed to point to any irreparable harm that might result if this court does not order the return of

Griffin's passport at this time. Accordingly, Griffin's motion for court-ordered return of his passport should be denied.

### C. Destruction of Passport

Even if Griffin could show irreparable harm and the requisite likelihood of success on his claims, the injunctive relief he has requested would be unavailable. The evidence indicates that Griffin's passport was cancelled and destroyed by the Department of State Bureau of Consular Affairs sometime after December 22, 2017, approximately four months before Griffin filed this lawsuit. See Decl. of Special Agent Andrew H. Shea ¶ 4 (Doc. No. 10-1, at 2). As the destroyed passport cannot be returned, cf. United States v. Schomaker, No. 97-CR-131-JD, 2006 WL 1236841, at *2, 2006 U.S. Dist. LEXIS 28138, at *6 (D.N.H. May 9, 2006), the district judge should deny Griffin's motion seeking its return (Doc. No. 7).

### Conclusion

For the foregoing reasons, the district judge should deny Griffin's motions (Doc. Nos. 4, 7, 17), and grant the United States's motion to dismiss (Doc. No. 2). Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). The fourteen day period may be extended upon motion. Failure to

14

file objections within the specified time waives the right to appeal the district court's order.  See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

*[signature]*
Andrea K. Johnstone
United States Magistrate Judge

November 27, 2018

cc:   John R. Griffin, Jr., pro se
      Robert J. Rabuck, Esq.